JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
The defendant-appellant, Derry Cass, appeals from the trial court's judgment classifying him as a sexual predator following a hearing conducted on March 22, 2004.
On January 14, 1985, Cass entered a guilty plea to aggravated burglary, in violation of R.C. 2911.11, and rape, in violation of R.C.2907.02. The trial court sentenced him to an aggregate indefinite prison term of fifteen to fifty years. On January 14, 2004, the trial court ordered the sheriff to return Cass from the Dayton Correctional Facility for a sexual-offender-classification hearing. Five days before the hearing, Cass was released on parole to a halfway house. He appeared at the hearing with court-appointed counsel.
At the hearing, the state's exhibits included (1) the indictment and journal entries in the prosecution that resulted in Cass's conviction, (2) the grand-jury transcript in that case, and (3) a report, dated March 11, 2004, of Cass's February 10, 2004, clinical evaluation. The trial court also heard the sworn testimony of the court clinic's staff psychologist, Carla Dreyer, Ph.D., and the sworn testimony of Cass. At the conclusion of the hearing, the trial court determined that there was clear and convincing evidence that Cass was a sexual predator as defined in R.C. 2950.01(E) and notified Cass of his duties to register in accordance with R.C. 2950.03.
In his brief, Cass has not cast his arguments as assignments of error, as required by App.R. 12(A)(1)(b) and 16(A)(3). He does, however, raise two issues, which we will treat as two different assignments of error. These assignments assert (1) that his counsel was ineffective by stipulating to Dr. Dreyer's qualifications as an expert and by failing to cross-examine her regarding her competency to administer and evaluate the Static-99 Test; and (2) that the trial court erred by failing to consider the results of certain treatment programs Cass maintained that he had completed, the records of which were never obtained by Dr. Dreyer.
As to the issue of Dr. Dreyer's qualifications, Cass argues that his counsel's stipulation of her expertise was improper because she had been licensed as a psychologist for only five months. This argument overlooks, however, Dr. Dreyer's testimony that she had worked at the court clinic since 1998. We conclude that a strategy of challenging Dr. Dreyer's qualifications as an expert was not warranted and would have been an exercise in futility in light of Evid.R. 702(B). The hearing record is devoid of evidence suggesting that Cass's attorney substantially violated an essential duty by stipulating to Dr. Dreyer's expertise, or that Cass was prejudiced by the stipulation. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland v. Washington (1984), 466 U.S. 668, 693,104 S.Ct. 2052.
Cass also argues that his attorney failed him by not thoroughly cross-examining Dr. Dreyer on the results of the Static-99 Test, which he claims were flawed. Dr. Dreyer testified that Cass had told her that while incarcerated he participated in individual and group sexual-offender treatment programs at the Dayton Correctional Institute between 1987 and 1991, and at the Madison Correctional Institute between 1994 and 1996, and that he had also completed the Monticello Program while in prison. Cass argues that because Dr. Dreyer conceded that the Static-99 Test, an actuarial instrument used to determine an individual's risk of sexual recidivism, was based only upon the offender's history, she should have obtained all the records pertaining to his treatment programs during his incarceration in order to insure the accuracy of the test. His counsel, he argues, rendered ineffective assistance by failing to demonstrate on cross-examination that she had not obtained all the necessary records of his treatment, which, he claims, would have exposed the inadequacy of her test evaluation.
Without a proffer of the records that Cass claims Dr. Dreyer failed to consider, we have no context as a reviewing court in which to judge whether their absence may have caused him prejudice, and therefore whether his counsel's failure to cross-examine Dr. Dreyer at length on this subject constituted ineffective assistance of counsel. We note that Cass scored a six on the Static-99 Test, which placed him in the high-risk category when compared to other tested individuals. He does not challenge the Static-99 Test as reliable scientific evidence of an offender's likelihood to re-offend under the four criteria set forth inState v. Hartman (2001), 93 Ohio St.3d 274, 284, 754 N.E.2d 1150. As there was no proffer of the records or reports that Cass claims Dr. Dreyer failed to consider, we have no basis to validate his contention that their absence invalidated the test results and required retesting. The only evidence of sexual-offender treatment, other than his successful completion of the Monticello Program — which Dr. Dreyer testified that she had in fact considered — was Cass's own testimony summarizing his experiences. Dr. Dreyer's opinion that Cass was "a risk to re-offend," it should be pointed out, was, as she testified, based not only upon his history but also upon her one-hour-and-ten-minute interview with Cass, the results of the Static-99 Test, and her training and experience. The weight to be given to her testimony was a matter for the trial court to determine under Evid.R. 702(C)(3).
In what we have cast as Cass's second assignment, he asserts that the trial court erred by adjudicating him a sexual predator without the missing treatment records. Again we must emphasize that we do not have before us any of the materials to which Cass refers, and therefore we have no basis to gauge their evidentiary worth. To satisfy the model for sexual-predator-classification hearings, the Ohio Supreme Court requires that the trial court create a record for review, provide for expert opinion, if required, on the potential for recidivism, and determine the offender's likelihood of re-offending after considering the statutory factors and discussing on the record the particular evidence and factors upon which it relies. State v. Eppinger, 91 Ohio St.3d 158, 166,2001-Ohio-247, 743 N.E.2d 881.
Here, the trial court conducted a hearing that fully comported with theEppinger model. By admitting and reviewing the exhibits related to Cass's guilty plea, Dr. Dreyer's psychological assessment as well as her testimony, Cass's testimony, and the arguments of the prosecutor and counsel, the trial court made a record for review as contemplated byEppinger. At the conclusion of the evidence and the arguments, the trial court made oral findings identifying each factor from R.C. 2950.09(B)(2) that it found applicable to Cass. The trial court found that Cass's prior 1977 conviction for gross sexual imposition involved a pre-teenage victim; that during the forcible rape he had displayed cruelty by threatening the victim with a brick; that he had exercised significant planning to carry out the rape; that he had experienced rape fantasies; and that, despite his completing sexual-offender-treatment programs, he was still, in the opinion of Dr. Dreyer, "at risk to reoffend."
After reviewing the record and the transcript of the sexual-offender-classification hearing, we conclude that the trial court had ample evidence before it to justify a firm belief that Cass was likely to re-offend. R.C. 2950.01(E). Of particular significance was Dr. Dreyer's report, in which she noted that Cass had admitted to rape fantasies, and that his sexual deviance, his history of sexual offending, his "choice of stranger and unrelated victims," and his history of substance abuse all created a likelihood of re-offending. Accordingly, there was clear and convincing evidence to support the determination that Cass is a sexual predator. See R.C. 2950.09(B). SeeState v. Morales, 153 Ohio App.3d 635, 2003-Ohio-4200, 795 N.E.2d 185. The assignments of error are overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman and Painter, JJ.